OLD COLONY TRUST COMPANY & another, executors, &
another *vs.* CLAUDE W. SILLIMAN & others.

Middlesex.    January 6, 1967. — February 6, 1967.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
& SPIEGEL, JJ.

*Equity Jurisdiction,* Instructions.    *Trust,* Capital or income, Trustee's
discretion.

Executors of a will and a trustee under that will were entitled to maintain
a nonadversary proceeding in equity for instructions with respect to a
discretionary power given by the will to the trustee so that the trustee
would know the extent of its authority under the power and the execu-
tors would be guided in deciding whether to bring suit against the
United States to recover paid taxes after their claim for a refund had
been disallowed by reason of the interpretation of the power made by
the tax authorities.    [8]

A determination by this court of the scope of a power given by a will to
a trustee thereunder, even though made in a nonadversary proceeding,
would be conclusive in subsequent litigation in a Federal court of tax
issues dependent upon such determination.    [8]

In a will establishing a trust, with a corporate trustee, to pay income
thereof to individual beneficiaries or, in certain events, to itself as trus-
tee for specified charitable purposes, and upon the ending of all the
individual income interests to transfer the principal of the trust, with
any unexpended income, to itself as trustee for such charitable pur-
poses, a provision that the trustee might "decide whether accretions to
the trust property . . . [should] be treated as principal or income and
whether expenses . . . [should] be charged to principal or income" did
not authorize the trustee to shift beneficial trust interests or to depart
from established rules of allocation, but merely authorized the trustee in
instances of doubt to use its best informed judgment in good faith.
[10–11]

PETITION filed in the Probate Court for the county of Mid-
dlesex on January 12, 1966.

The case was reported by *Leggat, J.*

*Carlton W. Spencer (Arthur O. Ricci* with him) stated the
case.

*James J. Kelleher,* Assistant Attorney General, for the
Attorney General.

*Edward R. Bonitz,* guardian ad litem, pro se.

WHITTEMORE, J.   The issue on this petition for instructions has been reserved and reported without decision by a judge of the Probate Court for Middlesex County.   G. L. c. 215, § 13.

Old Colony Trust Company and Ernest C. Burdick as executors under the will of Amelia Silliman Rockwell, and Old Colony Trust Company as trustee under that will, seek instructions in respect of the power of the trustee under Article II G 1 of the will providing, "My said trustee may decide whether accretions to the trust property shall be treated as principal or income and whether expenses shall be charged to principal or income."   The instructions are sought so that the trustee may know the extent of its power and authority under Article II G 1, and to aid the executors in determining whether to bring suit against the United States for the recovery of estate taxes paid in the following circumstances.

The will set up a trust (Old Colony Trust Company, the trustee) and provided for the payment of all the trust income to named individuals and members of family groups. Such income interests were to terminate on stated happenings, and the income theretofore payable to an individual or individuals was to be paid to Old Colony Trust Company as the trustee for the charitable purposes specified in the will.   Upon the ending of all such individual income interests the principal of the trust, with any unexpended income, was to be transferred to the trustee of the trust for charitable purposes.

Because of the gifts to charity, the executors in their Federal estate tax return claimed a deduction under § 2055 of the United States Internal Revenue Code of 1954.   Much of that claim having been disallowed, the executors paid the assessed deficiency, and filed a claim for refund.   After the filing of the petition for instructions the claim for refund was disallowed on the ground that "[v]alues of charitable remainders not presently ascertainable because trustee empowered to decide whether accretions to trust property shall be treated as principal or income, and whether expenses shall be charged to principal or income."

Individuals interested under the will were named as parties and the petition has been taken for confessed against them. A guardian ad litem, appointed to represent minors and unknown or unascertained persons, and the Attorney General have appeared and filed briefs taking a position like that of the petitioners. Counsel for the petitioners sent letters by certified mail to the Internal Revenue Service and to the District Director of Internal Revenue giving notice of the petition, and inviting an appearance or the filing of a brief as amicus curiae.

1. We rule that there is jurisdiction and that it is appropriate to entertain the petition. What the executors should now do in respect of Federal taxes is presently at issue and in doubt. A petition for instructions to enable executors to prepare a Federal estate tax return and claim a proper deduction was entertained in *Watson* v. *Goldthwaite,* 345 Mass. 29, 31, 35. See *Second Bank–State St. Trust Co.* v. *Second Bank–State St. Trust Co.* 335 Mass. 407, 409. The State court's interpretation of such a provision is determinative of its meaning notwithstanding that the issues depending upon the interpretation will be litigated in a Federal court. *Freuler* v. *Helvering,* 291 U. S. 35, 44–45. *Blair* v. *Commissioner of Int. Rev.* 300 U. S. 5, 9–10.

The uncertainty as to the extent of the trustee's discretion under such a provision as Article II G 1 is shown by the majority opinion and the dissenting opinion in *State St. Trust Co.* v. *United States,* 263 F. 2d 635 (1st Cir.). See also Proceedings of the American Bar Association, Section of Real Property, Probate and Trust Law, August 9–11, 1965, pp. 189–195. The view that underlies the majority opinion in the *State Street* case and, as it appears, the decision of the Internal Revenue Service denying the refund claim, stems from *Dumaine* v. *Dumaine,* 301 Mass. 214, 224, and certain language of the opinion. The appropriateness of a direct ruling by this court as to Article II G 1 is emphasized by the comment of this court in a footnote to the opinion in *Boston Safe Deposit & Trust Co.* v. *Stone,* 348 Mass. 345, 351, fn. 8: "As Chief Judge Magruder indi-

cated (at p. 641) in his dissent in *State St. Trust Co.* v. *United States,* 263 F. 2d 635, 640–642 (1st Cir.), a Massachusetts court of equity will 'supervise the administration of . . . trusts so as to control any attempt to shift the incidence of their enjoyment.' Even broadly expressed administrative and management powers (see p. 642) 'are limited by standards which the Massachusetts court of equity could and would apply to supervise effectively . . . [proper trust] administration.' We disagree with any suggestion to the contrary (at p. 639) in the majority opinion in that case, which unduly relies upon somewhat general language in *Dumaine* v. *Dumaine,* 301 Mass. 214. A fair reading of the whole of most trust instruments will reveal a 'judicially enforceable, external, and ascertainable standard' for the exercise of even broadly expressed fiduciary powers. See *United States* v. *Powell,* 307 F. 2d 821, 826 (10th Cir.)." As we indicate below, we adhere to this view.

We do not overlook the suggestion of the Supreme Court in the *Freuler* case (291 U. S. at 45) that the conclusiveness of the State court construction may depend upon its being made in due course of an adversary proceeding. We conclude, however, as has the Rhode Island court in a similar, non-adversary, proceeding, *Industrial Natl. Bank* v. *Rhode Island Hosp.* 99 R. I. 289, 294, that "the federal court may find that 'A decision on pertinent state law is to be welcomed at any time,' " citing *Commerce Oil Ref. Corp.* v. *Miner,* 303 F. 2d 125, 128 (1st Cir.). Our decision will be effective as a precedent for purposes of our own subsequent decisions. The resolution of the issue now before us is, we believe, of importance generally as well as to the present parties and, as noted, it is an issue to which we have already given some consideration in connection with a recent adversary proceeding.

2. Article II G 1 is not a grant of "absolute" or "uncontrolled" discretion. The instrument does not in terms substitute the decision of the trustee for usual and understood rules applicable to fiduciaries. The intent of the instrument as a whole (see *Dumaine* v. *Dumaine,* 301 Mass.

214, 218) is that the entire principal of the trust go eventually to charity. This intent will not be effectuated if the trustee can substitute for established rules its decision made in good faith as to what to do as between principal and income. The *Dumaine* decision (301 Mass. at 224) may heretofore have been thought to authorize such substitution where the trust provided that the trustee had "absolute and uncontrolled discretion" and was subject to no liability except for "his own dishonesty or gross negligence." We affirm the statement in the *Stone* case (348 Mass. 345, 351) that even very broad discretionary powers are to be exercised in accordance with fiduciary standards and with reasonable regard for usual fiduciary principles. Such reasonable regard means that established rules will be applied. We are not concerned with the possible effect of Article II G 1 as an exculpatory clause. That this may be one of the purposes of the article, with the effect of exempting the trustee from liability for error in applying such rules, does not make less certain the dispositive intent and effect of the will. An intention that deviation "from the principal-income law . . . [not be deemed] an abuse of discretion" (Proceedings of the American Bar Association, Section of Real Property, Probate and Trust Law, August 9–11, 1965, p. 190) does not, we think, necessarily show an intent that the trustee, in the proper administration of the trust, shall be free at his discretion to depart from the usual well understood rules. Compare Scott, Trusts (2d ed.) § 233.5. See Bogert, Trusts and Trustees, § 816.

We think the grant of power to "decide whether accretions" are to be treated as principal or income and how expenses are to be charged, apart from its possible exculpatory effect, is primarily an administrative power authorizing the trustee in instances of doubt to use its best informed judgment in good faith in the light of what the established rules suggest to the trustee is consistent therewith. This is a means of avoiding the expense of litigation. This power may not be used to shift beneficial interests. It does not authorize favoring either the charitable

or the private beneficiaries. It is of equal advantage to each in conserving the assets of the trust. In our view such a power imports no more uncertainty in the ascertainment and calculations of the value of the charitable remainders than does the contingency that the precise amount of administrative charges and of accretions over the years cannot be known in advance. The trustee and the executors, applying the known and established rules in respect of the allocations referred to in Article II G 1, are under a duty to compute present values of charitable remainders exactly as they would under a trust that does not include an express statement of the power in the trustee to determine the allocations.

3. A decree is to enter in the Probate Court consistent with this opinion.

*So ordered.*