Sherman et al., Trustees, Appellees, *v.* Sherman et al., Appellees; Beigel, Gdn., Appellant.

[Cite as Sherman et al., Trustees, v. Sherman, 5 Ohio St. 2d 27.]

(No. 39348—Decided January 5, 1966.)

28

"***

"***

"***

30

‘‘ ⁂

*Messrs. Turner, Wells, Granzow & Spayd* and *Mr. Robert Vaughan Spayd,* for plaintiff appellees (trustees).

*Messrs. Lair, Herkins, Lair & Wiseman* and *Mr. Anthony R. Lair,* for defendant appellees (life tenants).

*Messrs. Beigel, Mahrt, O'Grady & Duffy* and *Mr. Louis R. Mahrt,* for appellant, Henry L. Beigel, guardian *ad litem* for minors and trustee for unborn persons.

O'NEILL, J. The question presented to this court for decision is whether the trustees of the Sherman trusts have discretion under item IV(m) of the will of John Q. Sherman to allocate stock dividends and capital gains to income.

The answer to this question depends upon the intent of the testator in creating the power granted the trustees under item IV(m) of the will.

The fundamental rule of construction of a will is that the intent of the testator must govern unless to give effect to that intent would create an estate forbidden by law. *Carter* v. *Reddish* (1877), 32 Ohio St. 1; *Linton* v. *Laycock* (1877), 33 Ohio St. 128. This does not, however, prevent a testator from giving his trustees power to act in a manner in which they could not act if the will were silent.

With regard to the question before the court, a rule has

previously been approved which allows full effect to be given to the intent of the testator. That rule is that, in the absence of an expressed intention of the testator to the contrary, stock dividends and capital gains are a part of corpus and not income.

In *Devenney* v. *Devenney* (1906), 74 Ohio St. 96, 102, the court stated the generally accepted rule with respect to increase in the value of corpus, or capital gain, as follows:

"* * * That rule is that, in the absence in the will of an expressed intent otherwise, the increase in the value of the *corpus* held by a trustee from natural causes is principal and not interest."

In *Lamb* v. *Lehmann, Trustee* (1924), 110 Ohio St. 59, the court had before it a question relating to the characterization of stock dividends as "income" or "principal," under a testamentary trust agreement providing that the trustee should pay the net income to the life beneficiary during her lifetime and at her death distribute the principal to the remainderman. The court held that stock dividends should be considered as principal, in the absence in the agreement of a definition of income. The court stated in paragraph three of the syllabus:

"Where a will disposes of the net income upon stock in a corporation, without defining the term 'income' or limiting its meaning within or expanding it beyond that which would depend upon the regular action of the board of directors of such corporation, the testator will be presumed to have had in mind the lawful power and control of the corporation over the use and distribution of profits."

In both those cases, it is implicit that if the testator had desired a contrary result with respect to the allocation of stock dividends or capital gains and had expressed that desire, the court would have given effect to it. See, also, *Millar et al., Admrs.,* v. *Mountcastle* (1954), 161 Ohio St. 409; *Hopkins, Trustee,* v. *Cleveland Trust Co., Trustee* (1955), 163 Ohio St. 539; 1 Restatement of Trusts 2d (1959), 563, Section 233, comment (p.); III Scott on Trusts 2 Ed. (1956), 1773, Section 233.5.

The questions, then, are: Did the testator intend to include stock dividends and capital gains as receipts, and did he intend that the trustee should have the power to allocate such receipts between principal and income?

34

There is no serious contention that capital gains can not be treated as receipts. The contention of appellant is that stock dividends are the identical property which the trustees had prior to the declaration of such dividends. The appellant contends that such a dividend could not be considered a receipt on authority of *Millar* v. *Mountcastle, supra.*

In order to determine the answer, it is necessary to look to the provisions of the will.

The provisions with which this appeal is concerned gives the trustees the following powers, among others:

"(m) To determine in their discretion how all receipts and disbursements shall be credited, charged or apportioned between income and principal except that premiums on investments shall be charged against principal and shall not be amortized against income."

This item provides for discretion in the trustees with respect to the allocation of *all* receipts and disbursements *except* premiums on investments.

An examination of the entire will and the broad discretion it grants to the trustees and the complete confidence which it places in their judgment leads to the conclusion that the use of the term, "all receipts," indicates that the testator intended that anything of value which came into the hands of the trustees should be subject to the discretionary power of allocation. The stock dividend in question was received by the trustees and does have value.

While, for the purpose of distribution of property under the so-called half-and-half statute (as in *Millar* v. *Mountcastle, supra*), stock dividends may be treated as representing the same property as that property represented by the stock acquired as a result of a bequest in a will before issuance of the stock dividend, that concept is not controlling in this case.

So long as a trustee acts in good faith and exercises sound discretion, a court will not substitute its judgment for that of the trustee. The settlor has placed this discretion in the trustee because he desires the trustee's honest judgment, and not that of the court. *Hopkins* v. *Cleveland Trust Co., supra*, 548 and 549.

The law at the time of the creation of the trust was that

stock dividends and capital gains were to be allocated to principal, absent an intent of the testator to the contrary. If the testator here had not intended that his property should be allocated other than according to the established law, he could merely have omitted this provision from his will. Appellant argues that the intent was to give discretion only in cases of bona fide doubt as to the nature of the item to be allocated. So to hold would do violence to the language of item IV(m) which uses the term, "all." If the testator had not intended that the trustees should have discretion as to all receipts and disbursements he certainly would not have used the word, "all."

It is also argued by appellant that an interpretation granting the trustees discretion to allocate stock dividends and capital gains to income would render the power to invade corpus under item IV(p) useless. Such is not the case. For example, under the power to allocate, the trustees may, in their discretion, withhold receipts from income and build corpus, thus preventing a lowering in value of the assets. It should be noted that only under the power to invade corpus may the surviving spouse receive more than $25,000 per year. If corpus were invaded the trustees could then replenish it through an allocation of income to corpus.

Appellant argues further that in item IV (p) the trustees were given *uncontrolled* discretion to invade corpus, while in item IV(m) they were given merely discretion. While this is true, it is also true that this uncontrolled discretion is to be exercised only in case of an "emergency," such as those specifically named.

This court concludes, from a reading of the broad provisions of the will, that items IV(m) and IV(p) are complementary and are not mutually exclusive. The discretionary powers of the trustees were conferred to afford great flexibility in management of the trusts and to afford a workable balance between providing for the life beneficiaries and maintaining the trusts for 21 years beyond the life of the last survivor of the life beneficiaries.

Item IV(r) of the will provides:

"Should at any time a question arise in the minds of my trustees or executors *concerning the propriety of doing any-*

*thing* in the discharging of their duties as trustees or executors, then the decision of a majority of my trustees or executors will control.'' (Emphasis added.)

It is evident from a reading of this provision that the testator intended to place full power over the administration of the trust in the hands of a majority of his trustees, and not in a court, by allowing them to determine the propriety of their own actions. A court will not interfere, so long as the trustees do not act in bad faith, abuse their discretion, or act in a manner inconsistent with the purposes for which the trust was created. There has been no claim that the trustees have done so here.

Therefore, under the provisions of the will here involved, the trustees have sufficient power to allocate both stock dividends and capital gains to income, and the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

ZIMMERMAN, MATTHIAS and HERBERT, JJ., concur.
TAFT, C. J., SCHNEIDER and BROWN, JJ., dissent in part.

SCHNEIDER, J., dissenting in part. For the reasons stated in paragraphs three, four, five and eight of the syllabus of *Millar et al., Admrs.,* v. *Mountcastle,* 161 Ohio St. 409, and paragraph four of the syllabus of *Hopkins, Trustee,* v. *Cleveland Trust Co., Trustee,* 163 Ohio St. 539, stock splits and stock dividends in the nature of stock splits are not *receipts* which may be allocated to income by a trustee unless the trust instrument specifically confers authority upon the trustee so to do by unequivocal and express language.

I, therefore, dissent from paragraph two of the syllabus of this case so far as it pertains to stock dividends in the nature of stock splits.

TAFT, C. J., and BROWN, J., concur in the foregoing dissenting opinion.